# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Dwayne McCann, | |
| Plaintiff, | Case No. 14 C 1803 |
| v. | |
| Ray Semplinski, et al., | Judge John Robert Blakey |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

This is a *pro se* case brought by Plaintiff, a former Will County employee, against his former employer and several supervisors – Curt Paddock, DebyJo Ericksen and Ray Semplinski. Plaintiff's First Amended Complaint seeks to address several employment related disputes between the parties, alleging principally that he was discriminated against on the basis of race. Plaintiff states the following causes of action: (1) a Section 1981(a) equal protection claim against Semplinski and Paddock; (2) a Section 1981(a) equal protection claim against Ericksen; (3) a Section 1983 equal protection claim against Semplinski and Paddock; (4) a state law negligence claim against Semplinski, Paddock and Will County; (5) an intentional infliction of emotional distress ("IIED") claim against all Defendants; and (6) a Section 1983 *Monell* claim against Will County. On July 7, 2014, Defendants filed a motion to dismiss several counts of the First Amended Complaint [23]. That motion seeks the dismissal of Count IV, along with the

1

complete dismissal of Ericksen from the action (Counts II and V). Defendants' motion is granted in part and denied in part as explained below.

I.   **Background**[1]

From 2004 to 2010, Plaintiff worked for Will County as a plumbing inspector. [22] First Am. Cmplt. ("FAC") at ¶¶ 1, 13, 45. His duties consisted of inspecting the plumbing systems of buildings. *Id*. at ¶3. On January 10, 2010, Plaintiff's job was eliminated due to budget cuts and he was laid off. *Id*. at ¶45. On April 11, 2013, Plaintiff was re-hired by the County as a "General Combination Inspector" working under the supervision of Semplinski. *Id*. at ¶49. As a condition of being re-hired, Plaintiff was required to obtain a certification as a general building inspector within six months of his hire date. *Id*. Following his re-hire, Semplinski allegedly interfered with Plaintiff's ability to prepare for the licensing exam by refusing Plaintiff's requests for study materials. *Id*. at ¶¶51-55. In addition, Semplinski allegedly provided Plaintiff's white coworkers with hands-on field training to prepare for the test, but did not offer the same opportunities to Plaintiff. *Id*. at ¶¶59-62. On September 14, 2013, Plaintiff and four white coworkers took the licensing examination, but none of them passed the test. *Id*. at ¶64.

On September 25, 2013, Plaintiff suffered a rotator cuff injury during an inspection. *Id*. at ¶65. He sought medical attention and the doctor recommended light duty, but notwithstanding that recommendation, Semplinski assigned Plaintiff to perform an inspection in Wheaton, Illinois. *Id*. at ¶¶66-69. While driving to the

---

[1] The Background section is based upon the well-pleaded factual allegations of the FAC and the related documents properly before this Court. The facts are accepted as true solely for the purpose of this motion.

2

inspection, on September 27, 2013, Plaintiff passed out. *Id*. at ¶¶71-72. While it is unclear from the FAC whether Plaintiff was involved in an accident as a result of losing consciousness, he was at some point taken by ambulance to the emergency room and hospitalized for two days. *Id*. at ¶¶70-74.

Subsection 4(c) of Section 2 of the Illinois Workers' Compensation Commission's Handbook on Workers' Compensation and Occupational Diseases states:

> "4. What should the employer do after receiving notice of accident? The employer should promptly take the following steps: (c) if the employee cannot work for more than three days because of the injury, the employer must do one of the following: (i) Begin payments of TTD; or (ii) Give the employee a written explanation of the additional [sic] the employer needs before it will begin payment; or (iii) Give the employee written explanation of why the benefits are being denied." *Id*. at ¶80.

Though Plaintiff timely applied for workers' compensation benefits in reference to the September 27 incident, Defendants did not comply with Subsection 4(c). *Id*. at ¶81.

On October 2, 2013, Plaintiff's doctor's office called the County "concerning the form of payment" for Plaintiff's follow-up visit with his physician. *Id*. at ¶77. Defendant Ericksen informed the doctor's office that the "payment surely was not going to be workers' compensation related." *Id*. at ¶77. On October 7, 2013, Ericksen issued a written notice to Plaintiff that he was placed on light duty status, and that he was expected to return to work. *Id*. at ¶78.

In October 2013, Plaintiff began physical therapy for his shoulder, but after one and a half weeks he had pain in his leg and was diagnosed with a blood clotting disorder. *Id*. at ¶75. Having failed to obtain the required building inspector

3

certification within six months of his hire date, Plaintiff's employment was terminated on November 7, 2013. *Id.* at ¶79.

## II. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court must construe the FAC in the light most favorable to Plaintiff, accept as true all well-pleaded facts and draw all reasonable inferences in his favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013); *Long v. Shorebank Dev't Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Statements of law, however, need not be accepted true. *Yeftich*, 722 F.3d at 915. To survive Defendants' motion under Rule 12(b)(6), the FAC must "state a claim to relief that is plausible on its face." *Yeftich*, 722 F.3d at 915. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Rule 12(b)(6) limits this Court's consideration to "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

## III. Analysis

### A. Count II against Ericksen

Plaintiff's claim in Count II is that Ericksen discriminated against the Plaintiff by failing to afford him with the full benefits and/or procedures available under Sub-section 4(c) of Section 2 of the Illinois Workers Compensation

4

Commission's Handbook on Workers' Compensation and Occupational Disease. [22] at ¶108. Plaintiff bases his claim on the fact that Ericksen gave better treatment to "various similarly situated Caucasian American employees for their acquired work related physical injuries." *Id*.

Because it appears from the FAC that Plaintiff is proceeding under the indirect method of proof for his Section 1981 claim, and because Plaintiff offers no direct evidence of racial animus, the Court will proceed under the indirect method. To state a cause of action under Section 1981 via the indirect method, Plaintiff must plead facts showing: "(1) he is a member of a protected class; (2) he was qualified for the applicable positions; (3) he suffered an adverse employment action; and (4) similarly-situated persons not in the protected class were treated more favorably." *McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009). Further, personal liability under Section 1981 must be based on the defendant's personal involvement in the alleged discrimination. *Petrovic v. Enterprise Leasing Co. of Chicago, LLC.*, No. 12 C 3779, 2013 WL 1200220 at *2 (7th Cir. 2013).

Defendants do not challenge the four elements of the indirect method, but instead argue that Count II should be dismissed due to a lack of personal involvement by Defendant Ericksen. [23] at 5-6. This argument fails because, construing the FAC in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, Plaintiff has sufficiently alleged Ericksen's personal involvement. Plaintiff alleges the following concerning Ericksen:

> "That on or about the 10th day of January, 2010, based upon alleged budget cuts, defendants Semplinski, Paddock, Ericksen and defendant Land Use

Department's Rose Valicento informed plaintiff McCann that he was being laid-off from work." [22] at ¶45.

"That on or about the 2nd day of October, 2013, in response to an inquiry by plaintiff McCann's medical physician, Dr. Shah, Billing Department personnel concerning the form of payment for plaintiff McCann's scheduled follow-up physical examination. Defendant Ericksen informed the Billing Department personnel that the form of payment was surely not going to be workers' compensation related." *Id*. at ¶77.

"That on or about the 7th day of October, 2013, defendant Ericksen issued a written notice to plaintiff McCann confirming his being medically authorized to be placed on light duty and the availability of defendant County's Land Use Department having light duty work available, and informing plaintiff McCann that he had been expected to return to work on September 30, 2013." *Id*. at ¶78.

"Though plaintiff McCann had timely applied for workers' compensation benefits in reference to the episode occurring on the 27th day of September, 2013. Contrary to the provisions of subsection 4(c) of Section 2 Reporting An Injury or Exposure. Neither did defendant Ericksen, nor did defendant County's Land Use Department, within the prescribed three (3) day time period afford plaintiff McCann with any of the provisions prescribed by subsection 4(c) of Section 2 of the Illinois Workers' Compensation Commission's Handbook On Workers' Compensation and Occupational Disease." *Id*. at ¶81.

"That prior to the 19th day of December, 2013, neither did defendant County of Will, nor did defendant Ericksen afford plaintiff McCann with any of the provisions prescribed by subsection 4(e) [sic] of Section 2 of the Illinois Workers' Compensation Commission's Handbook On Workers' Compensation And Occupational Diseases." *Id*. at ¶82.

"At all times relevant hereto, the intentional initial deprivation and the subsequent intentional delay and intentional disruption of equal rights under Subsection 4(c) of Section 2 of the Illinois Workers Compensation Commission's Handbook On Workers Compensation And Occupational Disease conduct on the part of defendant Ericksen, some of which is set forth above, raises a plausible inference that defendant Ericksen acted in accordance with and was motivated by racial animosity toward plaintiff McCann when she discriminated against affording him with the full and equal benefit of Subsection 4(c) of Section 2 of the Illinois Workers Compensation Commission's Handbook On Workers Compensation And Occupational Disease, in that she intentionally discriminated Section 2 of the Illinois Workers Compensation Commission's Handbook On Workers

6

Compensation And Occupational Disease for his acquired work related physical injury, on the basis of his racial nationality, African America, as she enthuastically [sic] accorded to defendant County's various similarly situated Caucasian American employees for their acquired work related physical injuries." *Id*. at ¶108.

In light of the above, Plaintiff has sufficiently alleged that Defendant Ericksen was personally involved in discriminating against Plaintiff by withholding certain workers compensation related benefits and/or procedures. While the evidence may ultimately show that Ericksen had no responsibility for the provision of those benefits, the Court must base its determination at this stage on the face of the FAC, read in the light most favorable to the Plaintiff and with all inferences drawn in his favor. With that in mind, the Court finds that Plaintiff has sufficiently alleged Ericksen's personal involvement in the discriminatory activity.

Defendants also contend that Plaintiff's claim cannot survive because Section 1981 only applies to the making and enforcement of contracts; and the workers compensation benefits at issue here are not contractually based, but part of a public policy mandated by statute. *See* 820 ILCS 305/1 *et seq*. The Seventh Circuit, however, has held otherwise. *See Palmer v. Bd. of Educ. of Cmty. Unit Sch. Dist. 201-U, Will Cnty.*, Ill., 46 F.3d 682, 686 (7th Cir. 1995). In *Palmer*, the district court dismissed a Section 1981 claim because it found that Section 1981 was concerned exclusively with contractual relationships. *Id*. The Seventh Circuit disagreed, saying the "district court understood Patterson to mean that the only function of § 1981 is to protect the creation and enforcement of contracts. But this is not what the statute says. Section 1981(a) provides: All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and

7

enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." *Id*. at 687. This includes actions for the disparate application of state and local statutes. *Lewis v. Schmidt*, No. 10 CV 1819, 2011 WL 43029, at *6 (N.D. Ill. Jan. 4, 2011).

Here, Plaintiff alleges that certain workers compensation benefits and/or procedures were denied to him, but provided to white employees. He cites specifically to Sub-section 4(c) of Section 2 of the Illinois Workers' Compensation Commission's Handbook on Workers' Compensation and Occupational Disease. [22] at ¶108. The Handbook is a statutorily mandated creation of the Illinois Workers' Compensation Commission that contains "all information as to the rights and obligations of employers and employees under the provisions of [the Workers Compensation Act]." 820 ILCS 305/15a. Plaintiff has alleged that Defendants did not comply with the requirements of the Workers' Compensation Act as set out in the Handbook. This action therefore falls within the purview of Section 1981's protection of Plaintiff's right to the "full and equal benefit of all laws and proceedings." 42 U.S.C. § 1981; *Lewis*, 2011 WL 43029, at *6. The motion to dismiss Count II is denied.

### B. Count V against Ericksen

"To successfully plead a cause of action for intentional infliction of emotional distress, the plaintiffs must allege conduct that goes beyond mere insults,

8

indignities, threats, annoyances, petty oppressions or trivialities." *Public Finance Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976). It is not enough that the defendant acts with a tortious or even criminal intent, that he intended to inflict emotional distress, or that his conduct can be characterized by malice. Restatement (Second) of Torts § 46, comment d (1965). Further, the emotional distress must be "so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity." *Lundy v. City of Calumet City*, 567 N.E.2d 1101, 1103 (Ill. App. Ct. 1991).

"To state a cause of action for intentional infliction of emotional distress, a plaintiff must allege that: (1) the defendant's conduct was extreme and outrageous; (2) the plaintiff suffered severe emotional distress; and (3) the defendant knew severe emotional distress was certain or substantially certain to result." *Piech v. Arthur Andersen & Co., S.C.*, 841 F. Supp. 825, 831 (N.D. Ill. 1994). "In the employment setting, the conduct complained of must be particularly outrageous." *Id*. Claims for IIED in the employment setting generally "involve circumstances beyond what can be considered a typical employment dispute better addressed in a Title VII or equivalent suit." *Id*.

The facts alleged against Ericksen show a typical employment dispute, and are insufficient to plead a cause of action for IIED. Plaintiff has failed to allege any of the required elements against Ericksen, as he has not plead facts showing: (1) extreme and outrageous conduct by Ericksen; (2) that he suffered severe emotional

9

distress due to Ericksen's conduct; or (3) that Ericksen knew such distress would result from her actions. Count V against Ericksen is dismissed.

C. **Count IV Negligence**

Plaintiff's Count IV claim for negligence is dismissed because: (1) it is an improper attempt to recover in tort for breach of contract, and (2) it is a claim for breach of a collective bargaining agreement ("CBA") which is pre-empted by Section 301 of the Labor Management Relations Act ("LMRA"). Plaintiff cannot recover in tort for breach of contract. *Anderson Electric, Inc. v. Ledbetter Erection Corp.*, 115 Ill. 2d 146, 153 (Ill. 1986); *Sorkin v. Blackman, Kallick & Co.*, 540 N.E.2d 999 (Ill. 1989) (where an employment contract was at issue, the alleged tort could not proceed because it really sought economic loss arising out of alleged breach of employment contract). Courts commonly hold that obligations "arising solely out of a contract are not cognizable as a tort." *Lorillard Tobacco Co. v. Elston Self Serv. Wholesale Groceries, Inc.*, No. 03 C 4753, 2009 WL 1635735, at *6 (N.D. Ill. June 9, 2009). Here, Plaintiff seeks only to recoup monetary losses based on a violation of duties created by the CBA. [22] at ¶¶115-120. This is in reality an action for monetary damages based on breach of contract. It cannot be pursued as a tort claim for negligence, and is therefore dismissed as such.

Further, as a disguised breach of contract claim, Count IV is pre-empted by Section 301 of the Labor Management Relations Act ("LMRA"). To prevent "clever litigants from evading § 301's broad preemptive force by recasting contract claims as claims brought under state tort law, § 301 preempts tort claims as well," *Allis–*

10

*Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985), so long as the claim is one in which "state tort law purports to define the meaning of the contract relationship." *Id*. at 213. If the "resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is preempted and federal labor-law principles . . . must be employed to resolve the dispute." *Smith v. Colgate-Palmolive Co.*, 943 F.2d 764, 768 (7th Cir. 1991). "Any claim based on rights created by a CBA, as well as any claim requiring analysis and interpretation of CBA provisions, must be brought as a Section 301 claim and not as any state law claim." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394-95 (1987). Here, because this supposed tort claim is in actuality a breach of contract claim concerning the CBA, it is pre-empted by the LMRA and is therefore dismissed. Plaintiff is given leave to re-plead his claim under the LMRA if he can do so consistent with his obligations under Rule 11.

## IV. Conclusion

Defendants' motion to dismiss [23] is granted in part and denied in part as follows: (1) the motion to dismiss Count II is denied; (2) the motion to dismiss Count IV is granted without prejudice to re-pleading that Count under the LMRA as explained above; and (3) the motion to dismiss Count V as to Ericksen is granted with prejudice. The parties are to appear in Courtroom 1725 on October 1, 2015 at 9:45 a.m. for a status hearing as previously ordered [68]. The parties shall be prepared to discuss a filing date for a potential amended complaint, if necessary, at that time.

IT IS SO ORDERED

Dated:  September 29, 2015

_____
Judge John Robert Blakey
United States District Court